

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 26, 1951

Hon. Larry O. Cox
Executive Director
Board for Texas State Hospitals
      and Special Schools
Austin, Texas

Opinion No. V-1170

Re: Authority of the Board to
place permanent improve-
ments upon land held by the
State subject to mineral re-
servation and conditions
subsequent.

Dear Sir:

Your request for opinion reads in part as follows:

"The State of Texas, acting by
and through the State Board of Control
while it was administering the State
hospital system, acquired title to sev-
eral pieces of real estate which were
conveyed to the State of Texas with re-
strictions as to use. One tract of land
which was conveyed to the State was Camp
Fannin, which consists of 2,369 acres
of land. At the present time this Board
maintains and operates a tuberculosis
sanatorium on the property. On July 28,
1948, the War Assets Administrator con-
veyed by deed, without warranty, to the
State of Texas the 2,369 acres of land.
The deed contained the following con-
ditions subsequent:

**324**

"1.  The Federal Government retain-
ed all mineral rights.

"2.  That for a period of twenty-
five years from the date of
the instrument the State will
not resell or lease the prop-
erty without first obtaining
the written approval of the War
Assets Administration.

"3.  During national emergencies
the Federal Government is en-
titled to full unrestricted
use, control and possession
of the property, or any part
thereof, including additions
or improvements made by the
State of Texas.

"4.  The property is to be used
for a tuberculosis hospital
and sanatorium, and no other
purpose, for a period of twenty-
five years.

" . . .

"We have a very similar situation
existing at the Weaver H. Baker Memorial
Tuberculosis Sanatorium at Mission, Texas.
This installation was once Moore Air Field,
and the grantors of the real property were
the cities of Edinburg, Mission and McAllen.
The date of the deed is November 5, 1947.
The mineral rights are retained by the
grantors, and the conditions subsequent are
exactly the same except that they expire at
the end of a ten year period instead of a
twenty-five year period.

"In addition to the two above mention-
ed installations, this Board is operating

> and maintaining the Victory Air Field
> at Vernon, Texas. There is only one re-
> striction in the deed to the Vernon
> property. This property was conveyed
> to the State of Texas by the City of
> Vernon so long as the property is used
> for a public State purpose."

After making the foregoing statement, you re-
quest our opinion as to whether your Board has authority
to place permanent improvements on tracts of land which
have been conveyed to the State subject to the reserva-
tions and conditions subsequent described in your letter.

The authority of a State agency to acquire
real estate, the title to which necessarily vests in the
State, is dependent upon the will of the State expressed
through its legislature. The authorizing legislation
involved here is set forth in Senate Bill 147, Acts
50th Leg., 1947, ch.44, p.58 (Art.3251a,V.C.S.) which
provides:

> "Section 1. The State Board of Con-
> trol is hereby authorized to negotiate for
> and to acquire from the United States Govern-
> ment, or any agency thereof, or from any
> source whatsoever, by gift, purchase, or
> lease-hold, for and on behalf of the State
> of Texas, for use in the state eleemosynary
> service, and in the establishment of state
> tuberculosis sanatoriums, any lands, build-
> ings, and facilities within the State of
> Texas, and any personal properties wherever
> located, and to take title thereto for and
> in the name of the State of Texas.

> "Sec.2. The fact that the State of
> Texas can acquire surplus property, both
> real and personal, from the United States
> Government, and its several agencies, and
> can acquire such property by gift from pa-
> triotic and public spirited cities, coun-
> ties, and individual citizens, and can ac-
> quire such properties by purchase at nominal

cost, for use in the state eleemosynary service to the great improvement of public health and the advancement of public education, and can, by acquiring such property establish greatly needed tuberculosis sanatoriums, and the fact that tuberculosis is a communicable and infectious disease prevalent in South Texas and in East Texas, constituting a menace to the general health and welfare of all the people of the state, creates an emergency. . .

The East Texas State Tuberculosis Sanatorium occupies the Camp Fannin property and was created by Acts 50th Leg., 1947, ch.344, sec.16, p.679 (Art.3254d, V.C.S.). This Act was amended by Acts 51st Leg.,R.S. 1949, ch.207, p.389, but the only change was to eliminate the restriction of sanatorium use to white persons. The Act of the 50th Legislature provides:

"There is hereby created the 'East Texas State Tuberculosis Sanatorium' for tubercular white persons. As the Board of Control is able to secure sufficient buildings and equipment to establish such tuberculosis sanatorium, the said Board is hereby authorized and directed to recondition and re-model same as may be necessary to establish a Sanatorium for white persons only, to be known and designated as the 'East Texas State Tuberculosis Sanatorium'."

The Weaver H. Baker Memorial Tuberculosis Sanatorium occupies Moore Field and was created by Acts 50th Leg., 1947,ch.330, p.607, wherein it is provided:

"There is hereby appropriated for the fiscal year ending August 31, 1948, the sum of Five Hundred Fifty Thousand ($550,000.00) Dollars for the conversion and securing of title to Moore Field

Hon. Larry O. Cox - Page 5 - V-1170

near Mission, Texas, in accordance with
Senate Bill No. 147, Acts of Regular Ses-
sion, 50th Legislature, 1947, and estab-
lishing the Weaver H. Baker Memorial Tu-
berculosis Sanatorium. In the event
Moore Field cannot be secured the Board
of Control shall have authority to es-
tablish said Sanatorium at such other
place as the Board of Control may direct.
For the fiscal year ending August 31,
1949 the unexpended balance of Five Hun-
dred Fifty Thousand ($550,000.00) Dollars
is reappropriated for conversion. For the
fiscal year ending August 31, 1948, there
is appropriated the sum of Three Hundred
Ten Thousand ($310,000.00) Dollars to the
Weaver H. Baker Memorial Tuberculosis Sana-
torium for salaries, operation, support,
maintenance, general improvements, re-
pairs and contingent expenses. For the
fiscal year ending August 31, 1949, there
is appropriated Six Hundred Thousand
($600,000.00) Dollars for salaries, opera-
tion, support, maintenance, general im-
provements, repairs and contingent ex-
penses. . ."

The Victory Air Field was accepted by the 51st
Legislature (Acts 51st Leg., R.S.1949,ch.553,sec.25, p.
1085) under this language:

"The Board is hereby authorized
to accept from the City of Vernon the
buildings and land formerly used as an
air field for the establishment of a
State Hospital."

The nature or extent of the title to be ac-
quired by a State agency is dependent upon the in-
tention of the Legislature. If the authorizing Act
provides for the acquisition of "full fee simple
title", or "good and merchantable title", or uses

328

other language which may tend to show a particular intent with respect to the type of title to be acquired, then title should be acquired accordingly. The authorizing legislation here simply states that the Board is authorized to "negotiate for" and acquire "by gift, purchase, or leasehold, . . . any lands, buildings, and facilities . . . and to take title thereto for and in the name of the State of Texas." The emergency clause is predicated in part upon the fact that the State "can acquire surplus property, both real and personal, from the United States . . ." at a nominal cost. The provisions of this Act are quite broad and, to our minds, have the effect of delegating to the Board the authority to negotiate for, and within its discretion acquire, the best title obtainable. We call attention to the fact that the Act anticipated acquisition of surplus properties from the United States at a time when the Federal Government was making all conveyances of these properties subject to the same reservations and conditions as those set forth in the deeds to the State. Doubtless, the Legislature had knowledge of this practice and drew the Act as broad as it did with this in mind.

In an opinion by this office dated February 19, 1936, addressed to Hon. T. O. Walton, President of A. & M. College (Att'y Gen. Ops.,Book 370, p.319), it is stated:

". . . Insofar as acquisition by sale is concerned, the Legislature, insofar as this writer has been able to discover, has never made any specific regulation. The Legislature has merely provided that the Board of Directors shall have the power to purchase land. The only restriction being that the conveyances shall be approved by the Attorney General as to form. From a study of the foregoing articles, the legislative intention to leave the manner of acquiring lands, including the matter of mineral reservation by the grantor within the broad discretion of the

Board of Directors is quite clear to
the writer. Therefore, it is the opin-
ion of this writer, and you are accord-
ingly advised that the Board of Directors
of the Agricultural & Mechanical College
of Texas does have the legal authority to
acquire lands for use as experimental sta-
tions with a mineral reservation to the
grantor. However, it is suggestd that
the Board should exercise its discretion
in this matter with a view to the type of
land sought to be acquired, the use to
which it is to be subjected, the permancy
of the improvements to be placed thereon,
the desirability of entire control of the
land in case of future mineral develop-
ment, and other matters of equal impor-
tance. With this in mind it is a matter
wholly within the discretion of the Board
whether it will be good business to ac-
quire any land where the grantor desires
to retain all or part of the minerals. . ."

It has been held in County School Trustees of
Upshur County v. Free, 154 S.W.2d 935 (Tex.Civ.App.,1941,
error ref.w.o.m.), that school trustees may exclude the
mineral estate from a condemnation suit and acquire only
the surface, even though the statute provides for con-
demnation of the fee simple title.

In our opinion, the Board of Control acquired
titles which it could legally acquire. Therefore, as to
the tracts of land here involved, there is nothing in-
herent in the titles by reason of the reservations and
conditions which would prevent their use for permanent
improvements within the sound discretion of your Board,
and subject to proper appropriations being made there-
for by the Legislature.

Your request does not present the question of
the legislative intent with respect to permanent con-
struction on the above mentioned tracts of land as re-
flected by the various appropriation bills enacted subse-
quent to the date such land was acquired by the State.This

is a matter upon which we express no opinion.

## SUMMARY

Under an Act authorizing a State agency to acquire title to surplus properties of the United States and others through gift, purchase, or leasehold, such agency is authorized within its sound discretion to accept title subject to a mineral reservation and certain conditions subsequent. Consequently, the reservation and conditions do not in themselves prevent erection of permanent improvements on lands thus held. The advisability of making such improvements is a matter within the discretion of the Board, subject to legislative appropriation.

Yours very truly

PRICE DANIEL
Attorney General

By  H. D. Pruett, Jr.
Assistant

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant